All right. I'm just trying to let the courtroom clear out a little bit. Our third case for this morning is going to be Darryl Sutton v. Randy Pfister. So, Ms. O'Connell. May it please the Court. I'm Assistant Attorney General Erin O'Connell on behalf of the Respondent Warden. The District Court here granted habeas relief on a Fourth Amendment claim. This is a fairly rare occurrence because the Supreme Court held in Stone v. Powell that habeas should almost never be available in a collateral attack on a state conviction. So I want to ask you about some questions about preservation of the state's position here. One issue that jumped off the page at me was whether an argument complaining about ineffective assistance of counsel because counsel failed to make a Fourth Amendment objection is enough to preserve the underlying Fourth Amendment argument. But it looks to me as though the state has waived that issue altogether. That's correct. Our position is that alleging ineffective assistance of appellate counsel is insufficient to present it as an independent basis for relief in the habeas petition. However, I think this Court's cases make clear that this can nevertheless serve as a means of effectively preserving an argument under the Fourth Amendment. I don't understand that. I thought your position was that an ineffective assistance of counsel claim can be based on failure to assert a Fourth Amendment claim. Or in this case, failure to properly support or argue a Fourth Amendment issue. That's close enough, yes. So that's why I understood you to be saying, well, we aren't required to come up with Stone v. Powell in response to an ineffective assistance claim. Correct. But then we get the later problems of when the district judge shifts gears from ineffective assistance to the Fourth Amendment itself,  Indeed, it looked to me at that point that the state did not argue that the district court couldn't do that. The state says, well, you know, this is close enough. And actually, the standards are quite different. Given Stone v. Powell, we had a whole line of cases, Holman v. Page, Owens v. United States, in which we considered whether you could even complain about a Fourth Amendment issue as support for an ineffectiveness claim. We said, yes, there's the Supreme Court's Kimmelman decision. But on the other hand, if you have waived this at this point, and we really are here talking about the Fourth Amendment claim, that will structure our consideration of the case. I hear a couple different questions in that. The first is that in terms of our answering of the habeas petition, at that point there was only an ineffective assistance of appellate counsel claim. However, we did choose to recognize that the district court, in its discretion, could have construed the petition as also having preserved a Fourth Amendment issue. So, for example, in some cases there might be an argument as to whether a different claim would relate back to the original claim. Here we chose not to challenge this particular issue on that basis. Instead, we used the motion to reconsider as a means of raising something that the district court hadn't already considered. The district court had already addressed the Stone v. Powell issue, and we did include some argument that it was inappropriate to apply the inclusionary rule on habeas, which is the holding of Stone. Right. That's the merits. And I'm not worried that you waived your right to talk about the merits of the Fourth Amendment claim. But what I am concerned about, so, for example, in your motion to reconsider, you wrote, despite this court's error, meaning the district court's error, in granting habeas relief on a claim that was not presented, which I presume must have meant the Fourth Amendment claim, that claim may be considered now. The court has broad discretion to permit amendments. The Fourth Amendment claim would have been fine if he'd asked, and so on. So I'm just trying to get this sorted out procedurally. All right. So my next question about the Fourth Amendment is how you think it's supposed to work when the alleged Fourth Amendment violation, I'm going to ask your opponents this as well, when the alleged violation took place in a different case. I think it's a fairly unique circumstance, and there's not a lot of clear guidance in the case law. Well, hence my question. Somebody's going to have to answer that question here sooner or later. Well, in this case, I think there are a lot of different ways that it could have been defended, and it was defended in certain ways in state court and in certain ways here. In the context of the habeas proceeding, what was most clear at that point was that this occurred in a separate case where even assuming there was an error, a conviction actually resulted in that prosecution that was not based in any way on the blood sample at issue here. And that provided, by means of a mandatory state statute, a basis for the state to get an essentially untainted sample of the defendant's blood. That's true, but this is just a piece of the whole way the state seems to have done this. The proceedings in the Rack case are a disaster. I mean, you have Judge Hunter being asked to authorize the blood sample and the other samples for bond, and then nothing happens, and then Judge Lessene suddenly signs a completely different order not tethered to bond. The state's saying, well, you know, maybe he was thinking of some blood on a sweatshirt that nobody ever says anything to about him. And then you finally get to the Illinois appellate courts in that case, and they're not even paying attention to the fact that the transcript is in front of them. If full and fair litigation means anything, it's awfully hard to say that that's what was going on in the Rack case. It may be that it's completely irrelevant, but if it is irrelevant, I'd like to know why. And the state is continuing this with the blood sample. We could have gotten a blood sample. We didn't. You know, I don't know why you didn't, but just is it enough that you could have? It is enough that we were mandated by statute to get it, and I think to clarify. But we don't know why, and apparently this was a disaster, too. Isn't it correct, though, that there was a whole series of lawsuits in Illinois courts about whether the state could require somebody to submit to a second blood test under that statute when they'd already provided a first sample? That's correct. In many cases, state officials were obtaining additional blood samples, and then as a result of that they were charging defendants who had already provided blood samples. Or fees. Correct. So the Illinois Supreme Court considered those actions and decided that it didn't quite make sense to require the additional blood samples and the DNA fees. But those cases reflect that in a lot of circumstances in certain counties, officials were at that time still complying with what appears to be mandatory language in the statute. But I just wanted to clarify a little bit about the two separate prosecutions. The errors did occur in the Rack case in the pretrial context. I don't know that there's any discussion or dispute that after this error was made in taking the blood sample, the proceedings there were perfectly constitutional. He had a fair trial. There was not even any forensic evidence presented at the trial. It was primarily the victim's eyewitness identification of him as a perpetrator. So that provides the basis on which the state had the authority, well before he was prosecuted in the Lally case, to get a blood sample that complied with the Constitution, notwithstanding what appeared to be confusion at best in the pretrial proceedings as to what the basis was for asking for the blood at that point. Your position has to be that no matter how unconstitutional the collection of the blood sample was in the Rack case, once the Rack case is over, you tie a bow on it and it's finished and there's some presumption of procedural regularity or lack of collateral attack or whatever words you want to use, so that this unconstitutionally collected blood sample isn't subject to challenge anymore. And I'd like to know whether you can think of cases that have taken that position. Again, I think this is a fairly rare circumstance, but I don't know that I would agree that it's not relevant at all to consider what happened in the Rack case. I mean, we have to show that we had a lawful means of obtaining a new sample. If he had had an unfair trial and it was unconstitutional at that point, we wouldn't have had a lawful means of obtaining the sample. Here we did, and it was completely independent of the violation. So you're saying your whole case really hangs on your inevitable discovery argument then? It does to the extent this Court were to find that he overcomes the Stone v. Powell threshold bar on habeas relief for Fourth Amendment issues. But you may have waived the right to think about the Fourth Amendment by your willingness to litigate it. Well, I think that we haven't. I'm not sure if I'm understanding the question correctly, but I don't think we've waived the Stone v. Powell argument that generally it's not proper to grant habeas relief on a Fourth Amendment issue, regardless of what the circumstances are under which it arises. You've been here where it's fairly unusual circumstances about the two unrelated cases. But just to be clear, the issue of the full and fair hearing comes in the Lally case, and it was here that there was the apparent misunderstanding about what transcripts were in the record. And the state courts never nailed this down to evidence. They're presuming, they're forgetting that there are transcripts in front of them. There's never an actual adjudication of the circumstances. The state courts could have gone into inevitable discovery. If in general means anything, surely there must be some cases in which the process that the state, in fact, engages in is constitutionally deficient. That is correct, that there is a point at which a petitioner could argue that it is not full and fair. And why haven't we reached that point here? Well, what the cases seem to suggest is that the defendant has to show essentially that the state courts were operating in bad faith, that they were not taking seriously their obligation to adjudicate the Fourth Amendment claim. So we can see that there were errors. If you look closely at the record, there were errors. And the state court in the direct appeal did make one procedural error and said that there had been a failure to provide a transcript. But it also at that point went on and considered the merits of the issue. However, more significantly in the post-conviction appeal, the appellate court reviewed its work and said, actually we made a mistake there, we overlooked a transcript that was actually in the record. And then at that point the court, looking at that transcript, then reexamined the issue of whether there had been probable cause. And says that there is, based on evidence, it was never introduced into the record before the issuing judge. Correct. The evidence in the record was what Petitioner relied on in pursuing his motion to suppress in the trial court. This blood on the sweatshirt or whatever it was, right? Correct. And there's actually a sort of complicated reason as to why that made its way into the record here. But in the Rack case, in a post-conviction proceeding, Petitioner himself sought DNA testing on the sweatshirt blood evidence to show that he was not the perpetrator. He then, the prosecutor in that case, argued against that and said, well we didn't introduce forensic evidence and it doesn't show your innocence. Petitioner then switched gears in the Lally prosecution and said, well sure there might have been blood evidence but you said it didn't matter. But the prosecutor did testify regarding the underlying facts of Petitioner's argument in the post-conviction proceeding there. And in that context, Petitioner himself had been arguing that this was a basis for finding his innocence. So it did provide a basis for the state court to have found probable cause to conduct DNA testing in that context. Counsel, in practical terms, do you see any difference between the full and fair opportunity standard of Stone v. Powell and the later statutory enactment in the amendments to 2254D? I think that Stone v. Powell is an even more absolute bar to habeas relief than the statutory amendments under 2254D. Stone essentially held that a Fourth Amendment violation does not provide a basis for habeas relief. In this court, I think it was in Cabrera v. Hinson. I think you were suggesting a moment ago there's this kind of subjective bad faith standard. Yes, I was wondering about that too. Correct. For the exception to Stone, that's what you were arguing. For the exception to Stone.  Stone's essential holding was that these should almost never be a basis. And then this court in Cabrera interpreted that to mean they were outside of the scope of 2254A. However, the court said we can continue to look at whether there was a full and fair opportunity to litigate as a basis for habeas relief. And it's on that narrow point that the court retains the ability to grant relief on an underlying Fourth Amendment issue. And here, I would concede that there were errors committed by the state court, but it does not rise to the level of bad faith in their adjudication of his claim. And therefore, habeas relief should have been denied. Okay. Why don't you save your last minute and we'll take care of that. Thank you. Mr. Redfern. Good morning, Your Honors. Regarding the Stone v. Powell standard. Before you get into that, let me just lay on the table that one thing that concerns me very much about your position is the following. The rationale, as I understand it, one of the key reasons behind Stone v. Powell, was the Supreme Court's sense that the exclusionary rule does not really operate as deterrent for poor police practice or poor practice on the part of whoever is representing the state in the original case, because it's a collateral attack, it's attenuated, and all the rest of it. Here we have not even that. We have a different case, the Lally prosecution, looking at what happened in the Rack case. So if Stone v. Powell would have precluded a Fourth Amendment challenge in a collateral attack to the Rack conviction, then how much more would that logic apply to other cases? So that's my first point. My second point is that I'm still looking for authority that says you can reach back into a closed, separate case, pull out a Fourth Amendment violation, and then use that in a new case. The closest I can come to is the Supreme Court decisions saying that you can't reopen earlier convictions for purposes of sentencing enhancement. Custis, Daniel v. United States, these are like 1996, 2003 or 2004 or so. And the court basically said, we know that's harsh, but once a case is done, it's done, and if you're using that prior conviction for enhancement, it has to be regarded as procedurally regular. The only exception they made was if the right to counsel under Gideon was not afforded. But we're not worrying about that. So if you could incorporate those thoughts in your discussion of Stone, I would appreciate it. Okay. Starting with the issue of deterrence, I know my friend has talked a great deal about whether the purposes of the exclusionary rule would be applied or would be served by applying in this case. But those concerns are already reflected in the balance that Stone v. Powell struck. The point of Stone v. Powell isn't so much to deter specific misconduct of particular officers, but to ensure that the state judiciary takes the Fourth Amendment seriously. So we admit that it's a high bar. But as you said, in this case, if this isn't the state not taking the Fourth Amendment seriously, it's hard to imagine what is. Well, but it's not right because, you know, here's the state court in the Lally case. I don't think anybody's really criticizing what happened in the Rack case in and of itself, since the evidence doesn't wind up getting used. He's convicted on more conventional evidence. As far as we know, that was fine. And there was even this statute that would have permitted collecting the blood sample. So the Rack case is over and done with. Everybody's very confused. That's the nicest word I can use, about what is going on with this evidence in the Lally case. But what we do know is that the evidence was collected, and we do know that the DNA testing, even way back then, it's gotten a lot better now. Actually, these cases won't come up very much anymore, given the Supreme Court's bugle swab case. But whatever. Here we are. So I don't know that the state courts were anything but confused about what was going on. And I don't think Stone v. Powell has an exception for, well, when the state courts are really wrong, you get to re-adjudicate, but if they're only a little bit wrong, you leave their procedure alone. Well, Stone v. Powell doesn't require a federal court to find subjective bad faith. Hampton recognized that when the state court is not taking the Fourth Amendment seriously, it rarely says explicitly, we don't care about the Fourth Amendment, probable cause isn't required in Illinois, et cetera. I don't understand even this whole phrase, not taking the Fourth Amendment seriously. We have another case. It seems like if some state judge is routinely throwing Fourth Amendment arguments into the wastebasket or the state passes a law that says we're not going to consider any Fourth Amendment claim after five years after the arrest or search, it strikes me there could be situations where the state really doesn't give you a full and fair opportunity. But this case is really more a case of bungling than anything more sinister. Well, I don't know that we can draw a distinction between subjective bad faith and extreme negligence. In either case, the petitioners denied a full and fair hearing, and as Stone v. Powell recognizes, a fair judicial process is an individual right of the accused. Where do you get the extreme negligence standard from? I'm simply describing what happened in this case. Right. But what Supreme Court decision says that that's the right standard to apply to overcome the otherwise applicable bar of Stone? Well, I don't know that the Supreme Court says it, but I know that this court has repeatedly said that Stone v. Powell requires federal courts to review the merits of state court decisions, including their factual findings. And in Miranda, this court said that it would assume- Well, the court has qualified it by saying that this review, the Stone v. Powell review, is not a mere search for error. It's a search for egregious mistakes. But in Miranda, this court said that it would assume that a factual finding that has no basis at all in the record would be evidence of a denial of a full and fair opportunity. Well, in this case, we've gone one better because we have a factual finding that's squarely contradicted by the record. So this isn't the kind of case where the petitioner is asking a federal court to go sifting through the record and determine if the state court had quite enough to reach probable cause. This is where we have an unambiguous piece of record evidence that's been included and presented that shows that there was no probable cause. Suppose when they went back in the Rack case to Judge Lussine, the question whether Mr. Daniel was going to be out on-I'm sorry, Mr. Sutton was going to be out on bond was still a live question. And that's still in the warrant, and Judge Lussine signs the warrant, and they go take the blood and either do or don't let him out on bond. Would you think that would be enough to justify the collection of the blood sample? In other words, just following through on the original purpose. Or maybe it was maybe hypothetically when Judge Henry issues the order, it gets recorded and it gets done instead of them having to go back to Judge Lussine. If the blood were collected as a condition of bond, if Mr. Sutton had been let out, I confess I assumed that was constitutional, and that's why we haven't been talking about it, but I'm not actually sure. Is Leon's good faith exception relevant here? We've got blood drawn under a court order, right? No, it isn't. The district court found that it isn't, but the state hasn't raised that issue here. The state has raised a lot of issues along the way here. If we were to affirm this and order that relief be provided, that in essence that the Lally case be retried or dropped promptly, would anything prevent use of or obtaining a new blood sample from Mr. Sutton? Not that I'm aware of. So what's our point here? Our point here is really the blood essentially conclusively proves he was guilty of a violent attack. On this couple, it was adjudicated. And if we would be ordering a retrial with the same evidence, what are we doing here? Well, it's possible that the state won't retry him. He's still serving a conviction. But I don't think that we have to assume that the other conviction is still subject to challenge and treat this as if he could walk. That is a possibility. I think from the perspective of this court, the main concern is ensuring that Stone v. Powell doesn't become a completely dead letter. This court has recognized that there is some role for the federal judiciary in making sure that state courts adjudicate the Fourth Amendment fairly. And as the court said in Hampton and Cabrera, Stone v. Powell wouldn't allow a state court to say that probable cause isn't required. This is essentially the same thing. If a court can say when the record conclusively demonstrates that there was no probable cause, that there actually was, then it's difficult for me to see how that's any different. But that actually takes you into one of the state's backup arguments at this point. Even if there wasn't probable cause at the time the blood was collected, which is after the Lausanne Warrant, if I can call it that, it is a fact that if there hadn't been any blood at all, no one had ever discussed blood, once he's convicted in the Rack case, Illinois, like many, many states at that time, was starting to collect DNA samples from blood samples. And so there's this statute.  But they have an independent legal basis for doing it, and there's no reason to think they wouldn't have obeyed the law. Why should we adopt an assumption that the state would flout the law in this? Well, we don't know what the state would have done. We don't have anything in the record saying what practice was. Well, we have presumptions of regularity. We don't start in with an assumption that state officials are going to fail to carry out mandates under state law. This wasn't discretionary. It was required. No, but the mere fact that we know some statutory text was on the book doesn't tell us that the mandate would have been followed. We know that many mandates are not followed, particularly when they're directed at the executive and no individual would have standing to enforce them, when the mandates may require something that's beyond the technical capability of the state. We know that they didn't actually have DNA testing capability at this time, or a database. But they were keeping samples, though, and then it actually winds up that all these samples get— That isn't in the record, though. There's nothing in the record about what their actual practice was at this time. But we do know that there was a mandate. You're asking us to assume that the state was going to fail to follow the law, and I'm worried about that. No, Your Honor. I'm asking you to hold the state to its evidentiary burden to demonstrate what would in fact have happened. And they say they have satisfied that by showing that it was not discretionary, it wasn't just an option, it was mandatory. Now, you may think that's not enough, but I think that's how they're trying to meet that burden. Well, it is how they're trying to meet the burden, but I think that comparison with the Hampton case is actually instructive there, where it is a very similar situation. There's a statute on the books, but the key difference was that there was actual testimony saying, yes, at this time we were in fact collecting samples from every prisoner. It wouldn't necessarily require a lot to meet their burden, but I think that— Is that the Arkansas case? That's the Arkansas case. Okay. Thanks. It wouldn't necessarily require a lot to meet their burden, but this Court emphasized in Jones that it is an evidentiary burden and the state has to be held to it, and usually that means live testimony, especially on contested issues. So what do we do here where the whole issue doesn't even get raised until the district judge issues her opinion and enters a final judgment? So if you're talking about the Rule 59 standard here— No, I'm talking about, look, I confess, Mr. Redford, you've been doing a great job for Mr. Sutton, but I confess to having had some sense of irony when I read in the context of federal habeas litigation, your briefs say the interests of finality, judicial economy, and fairness to opposing parties demand that litigants receive only one opportunity to make relevant arguments. And federal habeas litigation is usually the third round or at least the second, and should we remand for an evidentiary hearing on this inevitable discovery issue? I don't believe so. Why not? My client did an excellent job litigating this case, and although he purported to be raising only an ineffective assistance claim, if you look at everything in that petition, it's all about how his Fourth Amendment rights were violated. And he even explicitly said that the district court should find either ineffective assistance or a Fourth Amendment violation. His real issue there was that he thought that the state was playing something of a shell game and saying you lose at one stage because there's no transcript, and now you lose at the next stage because there is. So he thought that there should be a law of the case issue there. But, you know, this court recognized in Malone and McGee that, you know, there's nothing inappropriate or surprising about a district court treating ineffective assistance claims as merits claims when that's the real purpose. But, you know, you should go back and look at the panel opinion, the opinion objecting to the refusal of our court to rehear Holman against Page and Bank, and then the later opinion in Owens. We went back and forth about whether you could even raise a Fourth Amendment claim in a habeas corpus proceeding because of the purposes of Stone v. Powell, and eventually because of what the Supreme Court had said and whatever, thinking carefully about the matter. The opinion in Owens says yes, but there's a sharp distinction drawn between the idea that you as a defendant are entitled to competent representation, which includes everything, which includes making your Fourth Amendment motions to suppress, which includes, you know, Brady, Batson, whatever. All kinds of state law claims. State law claims. That's how those come before us. A huge number of things that would not carry forward. Some of them do carry forward to habeas corpus. Others don't. And so we did draw quite a line. And so then to turn around and say, oh, well, you know, we kind of know he was trying to get at the Fourth Amendment claim, I think if that had been squarely in front of the district court judge, at least she would have had the benefit of better briefs on the scope of the Stone v. Powell bar. I don't think that's accurate, Your Honor, because the state didn't argue about Stone v. Powell at all. Not even in their rehearing petition. They cited it once in passing, but their whole brief was about the inevitable discovery doctrine. We'd ask that the court affirm. Thank you. All right. Well, thank you very much. Anything further, Ms. O'Connell? Just briefly, we could go tomorrow and get a new blood sample from a petitioner. We have the Ratt conviction. We have his conviction for Monica Rinaldi's murder. There are a lot of moving parts here and a lot of arguments that we could have made, but we relied on the inevitable discovery doctrine because it's essentially a harmless error rule. It says that there's no point to applying the exclusionary rule where the state can go ahead and get the evidence that it obtained unlawfully through lawful means anyways. And that's the case here. There's no point to applying the exclusionary rule, not even mentioning the fact that this is on habeas, where there's almost never enough of a deterrent effect to justify the exclusionary rule. But it particularly doesn't make sense where we can go today, get the same evidence, and if there's a new trial, introduce the exact same evidence and the same testimony and get a new conviction. All right. Thank you very much. And we appreciate, Mr. Redfern, your assistance to your client, that of your firm, and we will take the case under adjustment.